FILED
CLERK

February 3, 2023

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

ADAM KAPLAN,

                Movant,

      v.

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

                Respondent.

--------------------------------------------------------------X

--------------------------------------------------------------X

DANIEL KAPLAN,

                Movant,

      v.

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

                Respondent.

--------------------------------------------------------------X

**<u>MEMORANDUM AND ORDER</u>**

22-MC-3687 (GRB) (JMW)

22-MC-3688 (GRB) (JMW)

**A P P E A R A N C E S :**

Vincent J. Ancona, Esq.
**Ancona Associates**
220 Old Country Road
Mineola, NY 11501
*Attorney for Movants*

James Martin McHale, Esq.
**U.S. Securities and Exchange Commission**
100 F Street, NE
Washington, DC 20549
*Attorney for Respondent*

**WICKS,** Magistrate Judge:

Movants Adam Kaplan and Daniel Kaplan ("the Kaplans") brought these two proceedings seek to quash the subpoenas issued by the Security and Exchange Commission ("SEC") upon the Kaplans' financial institutions seeking financial records. Before the Court at this time are the Kaplans' nine motions to quash nine administrative subpoenas pursuant to the Customer Challenge Provisions of the Right to Financial Privacy Act of 1978 ("RFPA"), 12 U.S.C. § 3410. (*See* DE 1-DE 4 (22-mc-3687); DE 1-DE 5 (22-mc-3688).) This case, along with the motions, were referred to the undersigned by the Hon. Gary R. Brown on January 6, 2023. (*See* Electronic Orders dated January 6, 2023.) The subpoenas in question were issued by the SEC to numerous financial institutions seeking records related to the Kaplans. (*See* DE 1-DE 4 (22-mc-3687); DE 1-DE 5 (22-mc-3688).) Specially, the SEC issued subpoenas to Bank of America, N.A., Citibank, N.A., JPMorgan Chase Bank, N.A., and T.D. Bank, N.A as to each of the Kaplans. (*See id*.) The SEC also issued a subpoena to American Express as to Daniel Kaplan. (DE 1 (22-MC-3688).)

These subpoenas were issued in connection with an investigation into Illinois-based investment advisor IHT Wealth Management, LLC ("IHT") and related persons or entities for violations of securities laws. Consistent with the RFPA, *see* 12 U.S.C. § 3410(b), the Court directed the SEC to file a response to the Kaplans' motions on or before February 1, 2023 (*see* Electronic Orders dated January 9, 2023. The SEC filed one sworn opposition addressing all nine motions and requesting judicial enforcement of its subpoenas. (DE 6 (22-mc-3687); DE 7 (22-MC-3688).) The affidavits in support of the Kaplans' motions are identical. (*See* DE 1-DE 4 (22-MC-3687); DE 1-DE 5 (22-MC-3688).) Therefore, the Court addresses the Kaplans'

identical arguments in support of each motion, and the SEC's combined opposition,[1] collectively in this Order.[2]

## DISCUSSION

When a government authority issues an administrative subpoena seeking an individual's financial records from a financial institution, the RFPA's Customer Challenge Provisions allow that individual to file a motion to quash within ten days of service of, or fourteen days of the mailing of, the subpoena.  *See* 12 U.S.C. § 3410(a).[3]  The motion to quash must include a sworn affidavit or statement in support that states that the applicant is a customer of the subpoenaed financial institution, and states the reasons for the applicant's belief that the records the government authority is seeking are "not relevant to the legitimate law enforcement inquiry stated by the Government authority in its notice" or that the Government authority is not in "substantial compliance" with Section 3410.  *See* 12 U.S.C. § 3410(a)(1)-(2).  The motion must be served on the government authority in accordance with the Section 3410(a)(2).  *See id*.

"The RFPA provides 'the sole judicial remedy' for a bank customer to oppose the disclosure of financial information sought by a federal authority."  *Logan v. United States Securities and Exchange Commission*, No. 21-MC-352 (PKC), 2021 WL 4312076, at *1

---

[1] Earlier today, Movants' counsel telephonically requested the opportunity to file a reply.  First, the statutory scheme does not contemplate a reply.  Second, upon review of the submissions filed to date, the Court sees no need for a reply.  Finally, in light of the 7-calendar day requirement of 12 U.S.C. § 3410(b) for the Court to decide the motions, movants' request is awfully late.

[2] For ease of reference, standalone citations through this Order are to the 22-MC-03688 docket.

[3] The record reflects that some of the subpoenas and/or notices are dated November 17, 2022, some November 23, 2022, and others November 28, 2022, however, the Kaplans filed their motions to quash on December 22, 2022.  (*See* DE 1-DE 4 (22-MC-3687); DE 1-DE 5 (22-MC-3688).)  It does not appear that the Kaplans timely filed these motions.  The SEC does not challenge the timeliness, and thus, that objection may be deemed waived.  The Government did not note this lapse and thus a possible objection based on movants' delay was waived.  *See Douglas v. United States*, 410 F. Supp. 2d 292, 295 (S.D.N.Y. 2006.)

(S.D.N.Y. Sept. 22, 2021) (citing 12 U.S.C. § 3410(e)). Under the RFPA, an individual can only challenge: (1) the relevance of the subpoena request, (2) the legitimacy of the investigation, and (3) the agency's compliance with the customer notice provisions.  *See* 12 U.S.C.A. § 3410. Where "the court finds that the customer has complied with subsection (a), it shall order the Government authority to file a sworn response . . . . All such proceedings shall be completed and the motion or application decided within seven calendar days of the filing of the Government's response."  *See* 12 U.S.C. § 3410(b).

A district court's review of a challenge to an administrative subpoena under the RFPA is somewhat limited.  *See id*.  The Court must deny the motion when it finds "that there is a demonstrable reason to believe that the law enforcement inquiry is legitimate and a reasonable belief that the records sought are relevant to that inquiry," and "in the case of an administrative summons or court order other than a search warrant, order such process enforced."  12 U.S.C. § 3410(c).  Otherwise, "it shall order the process quashed or shall enjoin the Government authority's formal written request."  12 U.S.C. § 3410(c).

Here, the SEC is seeking a variety of financial records from January 1, 2017, to the present:

1.  Electronic file of all account transaction data . . .;

2.  Electronic image of all account opening and authority information, including, but not limited to, new account applications and attachments or exhibits thereto, corporate or partnership resolutions, and all signature cards, regardless of when created, prepared, received, or otherwise obtained;

3.  Electronic image of all monthly account statements;

4.  Electronic image of all supporting documents for all account transactions in the monthly account statements including, but not limited to, the following: canceled checks (front and back); deposit slips and copies of the deposit items listed on the deposit slips; debit and credit notices; drafts of all mam1er; cashier's checks; official checks; money orders; certified checks; electronic fund transfer notices; wire transfer advices/notices and wire transfer instructions (including authorizations, memoranda, and confirmations);

5. All Documents sufficient to identify all extensions of credit information including, but not limited to, the following: promissory notes; loan applications or agreements (including bank card and overdraft applications or agreements); guarantees; letters of credit; financial statements; security agreements; and collateral pledges.

6. All Documents sufficient to identify safety deposit boxes.

7. All Documents and Communications (including emails) between bank personnel and the account holder(s) or signatories concerning the accounts above.

8. All Documents sufficient to show online access to the accounts identified above including date, time, session length, transactions occurring during online session, and the ISP address used to access the account for each session.

(*See* DE 1-2 at 5.)

Movants largely challenge the subpoenas on relevance grounds, and make summary reference to a lack of compliance with the RPFA's notice requirements.  (DE 1-1 at 1-2.)  The Kaplans' request an order quashing the nine administrative subpoenas to the extent those subpoenas require the financial institutions to produce documents unrelated to IHT itself, and/or, an order quashing the subpoenas to the extent they require product of documents referring to or relating to the Kaplans.  (DE 1-1 at 1-2.)  On the other hand, the SEC explains in its sworn opposition that it has a reasonable belief that the records sought are relevant to its legitimate investigation into both Kaplans for possible securities law violations.  (DE 7 at 14.)  The SEC requests that the Court deny the Kaplans' nine motions to quash and enter an order enforcing compliance with the administrative subpoenas.  (DE 7 at 14.)

**A. Relevance to a Legitimate Law Enforcement Inquiry**

The SEC issued a formal order related to *In the Matter of IHT Wealth Management, LLC*, C-08834-A ("Formal Order").  (DE 7 at 4.)  The Formal Order provides that the SEC has information tending to show that IHT and related persons or entities may have violated or may

be currently violating certain federal securities laws, and more specifically, that "such persons or entities, directly or indirectly, may have been or may be, among other things, making false statements of material fact and omitting to disclose material facts concerning, among other things, the use of investor funds and fees charged to clients." (*Id*. at 4-5 (citing 15 U.S.C. § 77q(a), 15 U.S.C. § 78j(b), 15 U.S.C. §§ 80b-3(e) and 80b-6.).) As relevant here, the Formal Order expressly authorized: "a private investigation [to] determine whether any persons or entities have engaged in, or are about to engage in any of the reported acts or practices or any acts or practices of similar purport or object." (*Id.* at 5.)

The SEC states that as to the Kaplans, the focus of the investigation is whether they made false statements of material fact or omitted to disclose such facts related to, *inter alia*, the use of investor funds and fees charges to IHT clients. (*Id*.) IHT and the Kaplans were associated from May 2018 to July 2021. (*Id*.) The SEC states that it has evidence of IHT clients complaining that the Kaplans charged them above and beyond the amount of advisory fees the clients had agreed to and the Kaplans submitted paperwork to IHT that caused IHT to bill those clients the higher fees. (*Id*.) IHT ultimately terminated the Kaplans on July 16, 2021, and from September 2021 to November 2021, the Kaplans were associated with a Florida based investment adviser, Global Assets Advisory LLC ("GAA"), however, the SEC states it has evidence that the Kaplans have continued to act as co-investment advisers for a number of former IHT clients. (*Id*.)

First, the IHT investigation by the SEC is a legitimate agency investigation. The SEC followed Section 20(a) of the Securities Act, 15 U.S.C. § 77t(a), and Section 21(a) of the Exchange Act, 15 U.S.C. § 78u(a), in issuing the Formal Order. (DE 7 at 8.) As the SEC correctly argues, it has the authority to engage in this inquiry. *See Logan*, 2021 WL 4312076, at *2 ("The SEC has statutory authorization to investigate potential violations of the federal

6

securities laws." (citing 15 U.S.C. §§ 77t(a), 78u(a), 80b-9(a), 80a-41(a))).  The Kaplans offer no

arguments to the contrary.  *See Feiner v. United States Securities and Exchange Commission*,

914 F. Supp. 2d 474, 477 (S.D.N.Y. 2012) (noting that the SEC "is conducting its investigation

pursuant to a formal investigative order" and even the movant "does not appear to argue that the

investigation is illegitimate and/or motivated by an illegitimate purpose—i.e., harassment,

intimidation, etc.").  Thus, it is not seriously disputed that the subpoenas are at least related to a

legitimate agency inquiry.

Second, the SEC has sufficiently demonstrated that it has a reasonable belief that the

documents sought are relevant to a legitimate inquiry.  The Kaplans bear the initial burden of

providing a factual basis for concluding that access to their financial records would be improper.

*See In re SEC Private Investigation/Application of John Doe re Certain Subpoenas*, No. M8–85,

1990 WL 119321, at *2 (S.D.N.Y. Aug. 10, 1990) (noting that the burden begins with the

movant).  In turn, the SEC's burden here is not a great one – it "must demonstrate merely that it

has a reasonable belief that the requested records are relevant."  *Feiner*, 914 F. Supp. 2d at 478

(citing 12 U.S.C. § 3410(c)). In considering the propriety of such subpoenas, relevance is defined

broadly by the courts.  *Id.*  "Once a person's connection to apparently illicit conduct has been

shown, it is relevant to know whether that person's bank account contains evidence of such

conduct. What need be shown is not probable cause, but a good reason to investigate."  *Id*.

The Kaplans maintain their relationship with the IHT was limited to that of serving as

independent investment advisor representatives.  The Kaplans argue that SEC has cast its net far

too wide.  (DE 1-1 at 1-2.)  The Kaplans aver that (1) the subpoenas are grossly broad since they

seek records beyond the financial transactions between just the Kaplans and IHT, (2) the

subpoenas improperly seek the Kaplans' personal, confidential, and proprietary financial

information, (3) the relationship between the Kaplans and IHT is insufficient without more to support the requested disclosure since the SEC has not provided any evidence connecting the Kaplans' assets to those of IHT, and (4) the SEC previously received IHT's financial records through discovery.  (DE 1-1 at 1-2.)

The SEC argues that the Kaplans' contentions essentially boil down to the premise that the subpoena should be narrowed to IHT's conduct only.  (DE 7 at 11.)  The SEC explains that the Formal Order authorizes the SEC staff to investigate "whether any *persons* or entities have engaged in, or are about to engage in any of the reported acts or practices or any acts or practices of similar purport or object."  (*Id*. (emphasis added.))  Next, the SEC correctly argues that the RFPA makes no prohibition on seeking personal financial information.  (*Id*.)  Here, the SEC is investigating the Kaplans pursuant to a Formal Order based on evidence tending to show they misappropriated funds from clients in violation of federal securities laws.  The SEC maintains that it is entitled to the records sought since the SEC reasonably believes these records are relevant to investigating the Kaplans' potential misappropriation of client assets and the bank records could assist the SEC in ascertaining whether the Kaplans took fraudulent possession of those funds, showing how those funds were then disposed, identifying anyone else that engaged in the fraudulent conduct, and locating any misappropriated funds.  (*Id*. at 9.)

The SEC notes that it can seek information related to transactions generally, it is not limited to information related to transactions with specific persons, and that it needs this broad access to financial records to review them and trace the funds moving in and out of the Kaplans' accounts.  (*Id.* at 12.)  The SEC also points out that the Kaplans assert that the SEC may in fact be justified in its current endeavor if it had "any credible evidence of fraudulent transfers involving" the Kaplans.  (S*ee* DE 1-1 at 2.)  And the SEC states that it has demonstrated that it

has reason to believe the Kaplans indeed violated securities laws and these subpoenas seek information directly relevant to those potential violations pursuant to the Formal Order.

The Court sees no, nor has been offered any, reason to question the SEC's reasonable belief that the Kaplans' financial records are relevant to their investigation in the securities law violations pursuant to the Formal Order.  *See In re U.S. SEC Private Investigation etc*., 1990 U.S. Dist. LEXIS 10460, *6 ("By showing that plaintiff has a connection to activity it is charged to investigate, the SEC has shown reason for a belief that the bank records it seeks here contain relevant information."); *see also Feiner*, 914 F. Supp. 2d at 478 ("The SEC's task is to follow the money"); *Grafstrom v. Sec. & Exch. Comm'n*, 532 F. Supp. 1023, 1025 (S.D.N.Y. 1982) ("SEC further asserts that it has information that Miguel Rivera sold WEC stock as Grafstrom's nominee. Through the challenged subpoenas, the SEC staff says it is seeking to determine who made use of the proceeds of the sale of the stock, as it believes that such information will assist in the identification of the real sellers of the securities.").  The SEC's reasonable belief is amply supported by the record.

The Kaplans' arguments related to scope are also unpersuasive, because "[t]he fact that the SEC has cast its net broadly and may obtain information that ultimately is not *directly* relevant to the investigation is, without more, not a basis for the Court to quash or limit the subpoena." *See Feiner*, 914 F. Supp. at 479 (emphasis added); *see also Davidov v. SEC*, 415 F. Supp. 2d 386, 389-90  (S.D.N.Y. 2006) (rejecting movant's contentions that subpoenas seeking personal banking records are not relevant because they demand "broadly worded and all-inclusive production of documents relating to [the[ accounts").

The Court finds that the SEC has adequately explained that it holds a reasonable belief that the records are relevant to its legitimate investigation into the Kaplans for potential violations of federal securities laws.

### B. Notice

The SEC was required to serve "a copy of the subpoena . . . upon the customer . . . on or before the date on which the subpoena or summons was served on the financial institution" with a notice that states with "reasonable specificity the nature of the law enforcement inquiry" and provide the required information on how the customer may file a challenge to the subpoena. 12 U.S.C. § 3405. The SEC states that it served the subpoenas on November 23 and November 28, 2022, and upon consent of the Kaplans' counsel at the time, served the Kaplans via email, and even provided courtesy copies in the same manner to Kaplan's second counsel on December 9, 2022. (DE 7 at 13.) The Kaplan's third, and current counsel, filed the instant motions to quash. (*Id*.)

The SEC states that its notices comply with the requirements of Section 3405, and that Kaplans fail to identify any specific deficiencies. (*Id*.) The Kaplans summarily contend that the SEC failed to provide the notice required by the RFPA, without more (DE 1-1 at 2), and as a result, the only inference that can be drawn is that indeed there is no more. The SEC served the subpoenas on the Kaplans on or before the date that it served the financial institutions, provided the requisite information, and stated the nature of the law enforcement inquiry. (S*ee, e.g*., DE 1 at 3-9.) The SEC indeed complied with Section 3405. (S*ee, e.g*., DE 1 at 3-9.) No more was done, and no more was required.

## **CONCLUSION**

For the foregoing reasons, the motions to quash are denied and enforcement of the

subpoenas is granted.

Dated: Central Islip, New York
        February 3, 2023

**S O   O R D E R E D:**

/s/  *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge
